## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-40079-01-DDC |
| BRANDON VALERIUS (01), | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] prisoner Brandon Valerius's Motion to Disqualify under 28 U.S.C. § 144 (Doc. 104) and Motion to Vacate under 28 U.S.C. § 2255 (Doc. 103). The government has responded (Docs. 110 & 112). Mr. Valerius hasn't filed a Reply to support either motion, and his time to do so has expired. For reasons explained below, the court denies both motions.

### I.    Background

On August 23, 2017, a grand jury returned an Indictment charging Mr. Valerius with conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, § 841(a)(1) and § 841(b)(1)(A) in Count 1, and possession with the intent to distribute more than 50 grams of methamphetamine, in violation of § 841(a)(1) and § 841(b)(1)(A), in Count 2. Doc. 1 at 1–2. Mr. Valerius and the government reached a plea

---

[1]    Because defendant proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as defendant's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for defendant or search the record. *Id.*

agreement on Count 1 under Fed. R. Crim. P. 11(c)(1)(C).  Doc. 59 at 1.  On March 12, 2018,

Mr. Valerius entered a guilty plea to Count 1.  *Id.*  In exchange for Mr. Valerius's plea, the

government dismissed Count 2 of the Indictment and filed no additional charges against Mr.

Valerius arising from the facts underlying the Indictment.  *Id.* at 3–4 (¶ 5).  The government also

agreed not to file a sentencing enhancement under 21 U.S.C. § 851, which, the government

asserts, could have subjected Mr. Valerius to a mandatory minimum sentence of life

imprisonment.  Doc. 112 at 2–3; Doc. 106 at 15–16 (Tr. of Plea Hr'g Mar. 12, 2018 15:2–16:3).

Under Fed. R. Crim. P. 11(c)(1)(C), the parties proposed that the court sentence Mr. Valerius to

168 months' imprisonment on Count 1.  Doc. 59 at 3 (¶ 3).  The court accepted the plea

agreement and sentenced Mr. Valerius accordingly.  Doc. 96 at 2.

On June 3, 2019, Mr. Valerius filed a Motion to Disqualify under 28 U.S.C. § 144 (Doc.

104), with a supporting affidavit, and a Motion to Vacate under 28 U.S.C. § 2255 (Doc. 103).

## II.     Motion to Disqualify (Doc. 104)

Mr. Valerius has moved to disqualify the judge assigned to his case, the undersigned

judge, invoking 28 U.S.C. § 144.  Mr. Valerius theorizes that the judge was "a party to a binding

negotiated contract," *i.e.*, his plea agreement with the government.  Doc. 104 at 1.

### A.  Legal Standard under 28 U.S.C. § 144

A motion under 28 U.S.C. § 144 requires the movant to file a "timely and sufficient"

affidavit showing that the judge holds a personal bias or prejudice toward a party.  The affidavit

must "state the facts and the reasons for the belief that bias or prejudice exists."  28 U.S.C. § 144.

The court considers the sufficiency of the affidavit without considering the truth of the facts

alleged.  *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted).  The facts

alleged should lead a reasonable person to conclude that the judge has a special bias against the

defendant.  *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978).  The affidavit must state facts and reasons giving "'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'"  *Id.* (quoting *Berger v. United States*, 255 U.S. 22, 33–34 (1921)).  The court exercises its discretion when it decides whether recusal is warranted under § 144.  *Hinman*, 831 F.2d at 938.  And, "[a] trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true."  *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

### B.  Sufficiency of Mr. Valerius's Affidavit

Mr. Valerius alleges that the court holds a personal bias or prejudice against him.  Doc. 104-1 at 1–2 (Valerius Aff. ¶ 4).  He alleges, in essence, that the assigned judge is an interested party to his plea agreement, so he is unable to make an impartial decision on Mr. Valerius's motion to vacate under § 2255.  *Id.*; Doc. 104 at 2–3.  In support, Mr. Valerius cites remarks the court made at his sentencing hearing.  Doc. 104-1 at 2 (Valerius Aff. ¶ 5).  Namely, he references the court's remarks to defense counsel that it would not sentence Mr. Valerius until he withdrew his objection to the Presentence Investigation Report ("PSR").  *Id.*; *see also* Doc. 107 at 17–18.  Mr. Valerius contends that this statement coerced him into accepting the plea agreement.  Doc. 104-1 at 2 (Valerius Aff. ¶ 5).  Mr. Valerius's affidavit also references claims in his § 2255 motion.  He alleges the court failed to "state all the required elements of petitioner[']s offense . . . ."  *Id.* (Valerius Aff. ¶ 6).  And, he alleges, the court failed to inform him of the government's burden of proof at trial.  *Id.*

Mr. Valerius's argument appears two-fold.  First, he seems to assert that when the court accepted the plea agreement, it became an interested party to the agreement.  Doc. 104 at 2.  Consequently, he argues, the court compromised its impartiality, rendering it unable to invalidate

the agreement to which it is a party. *Id.* at 2–3. Second, he alleges that the court improperly participated in a discussion at the sentencing hearing. *Id.* at 2. Each argument is addressed separately, below.

### 1.  Interested Party to Agreement

Mr. Valerius asserts by affidavit that the assigned judicial officer "was a party to a negotiated plea agreement contract" under Fed. R. Crim. P. 11(c)(1)(C). Doc. 104-1 at 2–3 (Valerius Aff. ¶ 4). Fed. R. Crim. P. 11(c)(1) permitted Mr. Valerius and the government to discuss and reach a plea agreement. This rule also prohibits the court from participating in those plea discussions. *Id.* "Rule 11 is designed to totally eliminate judicial pressure from the plea-bargaining process." *United States v. Cano-Varela*, 497 F.3d 1122, 1132 (10th Cir. 2007) (citation and internal quotation marks omitted). But, Rule 11's "'stringent prohibitions . . . do not apply once the parties have concluded their agreement, and the prosecutor has laid it out in open court, even if the agreement is not formal and binding.'" *Id.* (quoting *United States v. Carver*, 160 F.3d 1266, 1269 (10th Cir. 1998)).

Rule 11 provides the government may recommend to the court a specific sentence or sentencing range as part of a plea agreement with a defendant. Fed. R. Crim. P. 11(c)(1)(C). This recommendation "binds the court once the court accepts the plea agreement." *Id.* Mr. Valerius apparently relies on this language to justify his conclusion that the court is a party to the plea agreement. Mr. Valerius, however, misapprehends Rule 11. He equates the court's *acceptance* of the binding plea agreement with it becoming a *party to* the plea agreement. Under Rule 11, "the court must evaluate the sentencing terms provided by a Rule 11(c)(1)(C) plea agreement, which will bind the court if it accepts the agreement." *United States v. Sandoval-Enrique*, 870 F.3d 1207, 1217 (10th Cir. 2017). Here, the court accepted the plea agreement, but

never became a party to the agreement reached by Mr. Valerius and the government.  The court rejects Mr. Valerius's contention that it is or ever was a party to his plea agreement, and thus is biased against him when it considers his motion under 28 U.S.C. § 2255.

### 2.   Improper Participation

As discussed above, Fed. R. Crim P. 11(c)(1) prohibits the court from participating in plea discussions.  Mr. Valerius asserts that the court's remarks at sentencing—asking if defendant's counsel's statement meant defendant was withdrawing his objection to an enhancement in the PSR—amounted to improper participation in the bargaining process.  Doc. 104 at 2; Doc. 104-1 at 2 (Valerius Aff. ¶ 5).  Mr. Valerius asserts that the court coercively refused to accept the plea agreement unless counsel withdrew defendant's objection to the PSR. *Id.*  But Mr. Valerius's characterization of the court's reference to his objection mischaracterizes the true substance of the sentencing hearing.

The first reference to Mr. Valerius's objection to the PSR came at p. 7 of the sentencing hearing's transcript.  *See* Doc. 107 at 7 (Sentencing Tr.).  There, the court referenced the one objection reported in the PSR, defendant's objection.  *See* Doc. 87 at 34 (PSR ¶ 185).  And then, as part of the same discussion, the court announced, "I understand from the contents of the report, Ms. Brannon"—referring to Mr. Valerius's counsel by name—"that that objection was not one you wished to press if the court planned to accept the parties' plea agreement.  Do I have it right?"  *Id.* at 8.  Mr. Valerius's counsel replied, "[t]hat's correct, Your Honor."  *Id.*  This exchange confirmed the contents of the PSR, which had reported that this objection "will not be of consequence if the court accepts the plea."  Doc. 87 at 34 (PSR ¶ 185, "Defendant's Objection").

The court then invited the prosecutor to address the small disparity between the custody component of the Plea Agreement (agreed custody sentence of 168 months' imprisonment) and the bottom end of Mr. Valerius's Guidelines range (180 to 253 months' imprisonment). Doc. 107 at 8. The prosecutor briefly explained the reasons for that disparity. *Id.* at 8–12. The court then solicited sentencing comments from defense counsel—who spoke briefly—and invited Mr. Valerius to make a statement. He declined. *Id.* at 13. The court then shared proposed findings and a tentative sentence, *id.* at 13–17, and explicitly informed the parties of the court's "plan to accept the parties' plea agreement." *Id.* at 15. The court then solicited any final sentencing comments or objections. *Id.*

In response, Mr. Valerius's counsel again referenced his lone objection in the PSR and advised the court, "It"—referring to the objection—"should not affect the court's acceptance of the particular sentence." *Id.* at 17. Counsel explained that if Mr. Valerius "were to prevail on that two level enhancement"—the aspect of the PSR challenged by defendant's objection—"his guideline range would be 151 to 188 [months' imprisonment] so it would also encompass the 168 months." *Id.* The 168-month sentence referred to the custody term agreed to in the parties' Plea Agreement. Doc. 59 at 3 (Plea Agreement ¶ 3).

The court then interrupted defense counsel to focus the discussion on Mr. Valerius's objection. This exchange followed:

> THE COURT:   [Let me] stop you there and ask, is that your statement of withdrawing the objection? Tell me when you want to do that because I'm not going to sentence him until it's withdrawn.
>
> [DEFENSE COUNSEL]:  At this point, based on the court's acceptance of the plea agreement, we would withdraw the objection.

*Id.* at 18. The court then announced it did not intend to rule defendant's objection because he had withdrawn it. *Id.* In full and fair context, the words invoked by defendant's argument

simply aimed to determine whether the court needed to rule defendant's sole objection. This clarity was important because, as the Supreme Court has explained, sentencing judges "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347–48 (2007)). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49.

Mr. Valerius's argument fails to apprehend that the court could not define this benchmark until that objection was decided or withdrawn. *Id.* Only then could the court make the requisite Guidelines findings and turn to the sentencing considerations identified by federal statute. *Id.* at 49–50 (citing 18 U.S.C. § 3553(a)). Mr. Valerius's characterization of the court's reference to his objection misapprehends the court's efforts to comply with Supreme Court precedent. The court's reference to this discussion simply confuses the court's effort to decide what, by precedent, it was required to decide, with coercion. Perhaps Mr. Valerius's confusion is sincere, but that does not make it correct.

Risking the journalistic offense of "burying the lede," the court notes that Mr. Valerius's statements at an earlier hearing refute his coercion argument. During the change of plea hearing, the court engaged defendant in a lengthy colloquy. His sworn answers during that hearing reject the idea that the court coerced his agreement to the Plea Agreement. For example:

> THE COURT:  I'm told you have agreed on a plea agreement that is dedicated to writing. Is that correct?
>
> THE DEFENDANT:  Yes.
>
> ***
>
> THE COURT:  So, as I understand it, your written plea agreement calls for you to plead guilty to Count 1 of the Indictment. Is that the way you understand it?

THE DEFENDANT:  Yes.

THE COURT:  Who made the decision to plead guilty to Count 1?

THE DEFENDANT:  That was part of the agreement.  I did.

THE COURT:  You make that decision?

THE DEFENDANT:  Yes.

***

THE COURT:  Did anyone ever try to force you to plead guilty to any charge?

THE DEFENDANT:  No.

**THE COURT:  Has anyone ever threatened you to get you to plead guilty to Count 1?**

**DEFENDANT:  No.**

THE COURT:  Who made the decision that you would agree to the plea agreement?

THE DEFENDANT:  I did.

**THE COURT:  Anybody force you to do that?**

**DEFENDANT:  No.**

**THE COURT:  Anybody threaten you to do that—to get you to do that?**

**DEFENDANT:  No.**

Doc. 106 at 11, 13–14 (Change of Plea Hr'g).  In sum, the record negates Mr. Valerius's

argument that the court coerced him into agreeing to a plea agreement he had agreed to accept

long before his sentencing hearing.

### C.  Recusal under 28 U.S.C. § 455

Section 455 of Title 28 to the United States Code also governs recusal decisions.  And

though Mr. Valerius's motion never cites this statute, the court, construing his motion liberally,

also considers whether his motion provides a reason for the court to recuse.  Under § 455, a

judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(a) & (b)(1).  The test for determining impartiality is an objective one, based on a judge's "outward manifestations and reasonable inferences drawn therefrom." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citation omitted).  Speculation, opinion, and adverse rulings are no reason for recusal under § 455.  *United States v. Cooley*, 1 F.3d 985, 993–94 (10th Cir. 1993).

Mr. Valerius has supplied no reason warranting disqualification under § 455.  As the court has explained, Mr. Valerius has not shown that the court improperly participated in his plea negotiation with the government.  Nor has he shown that the court coerced him into a guilty plea during the sentencing hearing.  *See* Section II.B, *supra*.  In sum, Mr. Valerius has presented no basis for questioning the impartiality of the assigned judge, or any basis for inferring a "personal bias or prejudice" against him.  28 U.S.C. § 455(b)(1).  The court thus declines recusal under § 455.  *See Hinman*, 831 F.2d at 939 (noting that a judge should not recuse himself because of unsupported speculation).

### D.  Conclusion

For reasons explained above, Mr. Valerius has failed to meet his burden to establish that the assigned judge has a bias or prejudice against him.  The court thus denies his Motion to Disqualify (Doc. 104).

### III.    Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 103)

Mr. Valerius asserts he is entitled to relief on four grounds under 28 U.S.C. § 2255.  The court first addresses his two claims for ineffective assistance of counsel.  Mr. Valerius asserts the government used evidence against him at trial procured from unlawful search warrants, and that his counsel should have (1) challenged the allegedly unlawful warrants and (2) moved to

suppress the evidence these warrants produced.  Doc. 103 at 13–16.  Since these claims are related, the court analyzes them together, below.  The court then turns to Mr. Valerius's claim he is entitled to relief because the court failed to inform him of all the elements of the crime and failed to inform him of the government's burden of proof at trial.  *Id.* at 17.  Finally, the court addresses Mr. Valerius's argument that he did not knowingly, intelligently, and voluntarily waive his right to appeal in his plea agreement.  *Id.* at 23.

### A.  Legal Standard under 18 U.S.C. § 2255

Section 2255 entitles a federal prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  The court "must hold an evidentiary hearing" on a § 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)).  A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.  *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).  A court need not conduct an evidentiary hearing where a petitioner's factual allegations are inherently incredible, where they amount to conclusions instead of statements of fact, or where they contradict the record.  *See id.* at 1175–76; *see also United States v. Cervantes-Samaniego*, Nos. 07-20099-JWL, 11-2486-JWL, 2012 WL 1788141, at *1 (D. Kan. May 17, 2012).

### B.  Ineffective Assistance of Counsel

Mr. Valerius asserts ineffective assistance of counsel on two grounds.  First, Mr. Valerius asserts that his counsel failed to challenge the unlawful issuance and execution of state search

warrants for his "out of state" property. Doc. 103 at 13. Second, Mr. Valerius asserts that counsel failed to suppress evidence obtained from those search warrants. *Id.* at 15. The government responds that Mr. Valerius has failed to establish deficient performance or prejudice under the *Strickland* standard. Doc. 112 at 9–19. The court agrees with the government.

To prevail on an ineffective assistance of counsel claim, a defendant/petitioner must satisfy the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the [petitioner] must show that counsel's performance was deficient." *Id.* This requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.*

A petitioner must demonstrate both *Strickland* prongs to establish ineffective assistance of counsel. *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006). A failure to prove either one is dispositive. *Id.* Below, the court applies *Strickland*'s test to Mr. Valerius's claims.

## 1. Deficient Performance

To establish that counsel's performance was deficient under the first *Strickland* prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A strong presumption exists, however, "that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic or tactical decisions are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense

strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (citation and internal quotation marks omitted).

A petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 381 (citing *Strickland*, 466 U.S. at 688–89). The court must evaluate "[t]he reasonableness of counsel's performance," not with the benefit of hindsight, but instead by applying "counsel's perspective at the time of the alleged error and in light of all the circumstances." *Id.* (citing *Strickland*, 466 U.S. at 689). When making this evaluation, the court's "standard of review is highly deferential." *Id.* (citing *Strickland*, 466 U.S. at 689).

Mr. Valerius fails to meet his burden under *Strickland*'s first prong. Mr. Valerius asserts that in January 2017, Riley County, Kansas law enforcement officials "applied for search warrants for suspected evidence that was allegedly stored at Cellco Partnership D/B/A Verizon [W]ireless, in Bedminster, [New Jersey]." Doc. 103-1 at 1. Mr. Valerius argues that Kansas state courts are barred from issuing search warrants for property located outside of Kansas. *Id.* at 2 (citing Kan. Stat. Ann. § 22-2503). He asserts that defense counsel was aware of this limitation on search warrants and failed to inform him of the relevant law. Doc. 103-1 at 4. Because of this error, Mr. Valerius asserts, he never made an "informed and conscious choice between accepting the prosecution[']s offer or going to trial . . . ." *Id.*

Mr. Valerius has failed to establish deficient performance of counsel under *Strickland*. His argument that Kan. Stat. Ann. § 22-2503(b) restricts Kansas state courts to issuing search warrants for property within Kansas misapprehends the applicable law.[2] Contrary to Mr.

---

[2]      Kan. Stat. Ann. § 22-2503(a)(2) provides that the magistrate may issue a search warrant for the installation, maintenance, and use of a tracking device. Kan. Stat. Ann. § 22-2503(b)—the provision Mr. Valerius cites—provides that search warrants issued under § 22–2502(a)(2), "(1) that are issued by a district judge may be executed anywhere within the state; and (2) shall be valid during the time period

Valerius's assertion, Kansas law permits state court judges to issue warrants for electronic information maintained by out-of-state service providers.  Specifically, Kan. Stat. Ann. § 22-2502(a)(1)(G) authorizes search warrants for "any information concerning the user of an electronic communication service . . . held by . . . entities primarily located outside the state of Kansas if the jurisdiction in which the entity is primarily located recognizes the authority of the magistrate to issue the search warrant . . . ."  Because Kansas statutes authorize the state's judges to issue warrants for electronic information held by out-of-state service providers in the circumstances described by § 22-2502, Mr. Valerius's premises his argument on an incorrect legal conclusion.  Defense counsel's performance cannot have been deficient on this basis.  *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (declining to find ineffective assistance of counsel where counsel had failed to assert a meritless issue at trial); *see also Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that if the argument defendant asserts should have been raised is meritless, "its omission will not constitute deficient performance" (citation and internal quotation marks omitted)).

Second, Mr. Valerius asserts ineffective assistance based on defense counsel's failure to move to suppress evidence seized by executing the warrant.  Doc. 103 at 15.  Mr. Valerius asserts that counsel "failed to inform [him] and file [ ] pretrial motions that should have excluded any evidence the Kansas state authorities had gathered and which the federal government was

---

specified by the warrant regardless of whether the tracking device or the subject person or property leaves the issuing jurisdiction."

Mr. Valerius never contends that a judge issued a warrant for a tracking device in his case. Indeed, the search warrant in Mr. Valerius's case sought cellular phone records for seven subscribers—including Mr. Valerius—for information like the subscriber's name and address, telephone number, email address, IP address, means and source of payment, associated phone numbers or accounts, account notes, start date of service, length of service, cellular site location data, and historical GPS data.  Doc. 103-2 at 2–3.  Because Mr. Valerius has produced no evidence that a court issued a warrant for a tracking device in his case, Kan. Stat. Ann. § 22-2503(b) doesn't apply.

13

going to introduce in the case . . . ."  Doc. 103-1 at 4.  As explained above, Mr. Valerius has

misapprehended the law governing search warrants for cell phone records stored outside the state

of Kansas.  His counsel may reasonably have believed that seeking to suppress Mr. Valerius's

phone records would have been a meritless challenge.  *See Sperry*, 445 F.3d at 1275 (holding

that trial counsel's failure to raise a meritless issue is not ineffective assistance of counsel).  His

performance was not deficient on this basis.

 Finally, the government asserts that even if defense counsel had prevailed on a motion to

suppress evidence of defendant's cell phone records, counsel might reasonably have believed

that the government still had enough evidence to secure convictions on Counts 1 and 2.  Doc.

112 at 13.  The court agrees.  First, the government also had evidence of cell phone records

gathered from Mr. Valerius's coconspirators.  *See, e.g.*, Doc. 87 at 6 (PSR ¶¶ 20–21).  Mr.

Valerius lacks standing to seek suppression of these records.  *See Rakas v. Illinois*, 439 U.S. 128,

133–34 (1978) ("Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted." (citations and internal quotation marks

omitted)).  Second, the government had evidence of a telephone call from a coconspirator to Mr.

Valerius during an attempted sale of methamphetamine to a confidential informant on July 27,

2017.  *See* Doc. 87 at 10–11 (PSR ¶¶ 43–46).  This call connected Mr. Valerius to the

conspiracy.  Third, law enforcement seized 350 grams of methamphetamine from Mr. Valerius's

car on August 3, 2017.  *See id.* at 13 (¶¶58–61); *id.* at 20 (¶ 94)).  This evidence alone could have

supported his conviction on Count 2.

 Given the evidence against Mr. Valerius—and the weakness of the cell phone record

suppression argument—defendant's counsel reasonably may have focused his efforts on

mitigating sentencing exposure.  Indeed, Counts 1 and 2 each charged that Mr. Valerius

possessed a quantity of methamphetamine triggering a mandatory 10-year sentence of 21 U.S.C. § 841(b)(1)(A).  Doc. 1 at 1–2.  Mr. Valerius also had two prior convictions for felony drug offenses.  *See* Doc. 87 at 23, 25 (PSR ¶¶ 117, 120).  With these two prior convictions, 21 U.S.C. § 841(b)(1)(A) provides for a sentence of not less than 25 years' imprisonment for violating 21 U.S.C. § 841(a).  The plea agreement capped Mr. Valerius's sentence at 168 months' imprisonment on Count 1, and achieved a dismissal of Count 2.  In sum, counsel's decision to pursue a plea agreement—instead of seeking to suppress Mr. Valerius's phone records—did not fall below an objective standard of reasonableness because it significantly reduced Mr. Valerius's sentencing exposure.  *Strickland*, 466 U.S. at 669 (holding that to prevail on in ineffective assistance of counsel claim, defendant must show that "counsel's representation fell below and objective standard of reasonableness"); *see also Harrington v. Richter*, 562 U.S. 86, 107 (2011) (holding that counsel is "entitled to formulate a strategy that was reasonable at the time" considering effective trial tactics and strategies).  Mr. Valerius has failed to meet his burden to establish deficient performance under *Strickland*.

## 2.  Prejudice

Even if Mr. Valerius could establish deficient performance by his counsel, he has failed to establish prejudice.  *Orange*, 447 F.3d at 796–97 (requiring that petitioner establish both prongs of the *Strickland* standard).  To establish prejudice under *Strickland*'s second prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* When deciding this issue, the court must "focus[ ] on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687). In cases where the petitioner has entered a guilty plea, he must show that counsel's deficient performance "affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* When an ineffective assistance claim is premised on counsel's failure to litigate a Fourth Amendment issue, "the [petitioner] must also prove that his Fourth Amendment claim is meritorious . . . ." *Kimmelman*, 477 U.S. at 375.

Mr. Valerius asserts that Kan. Stat. Ann. § 22-2503(b)(1) renders the search warrants issued by the Kansas court unlawful. Doc. 103 at 13–14. And, he asserts, defense counsel should have informed him of this vulnerability and moved to suppress the evidence the warrants acquired. *Id.* Mr. Valerius argues that he "could not make an informed and conscious choice between accepting [the] prosecution[']s offer and going to trial." Doc. 103 at 14. And that "[i]f defense counsel [had] provided correct information, [he] would not have waived his rights or plead[ed] guilty" and would have proceeded to trial instead. *Id.*

The court is unpersuaded by Mr. Valerius's argument of prejudice. First, Mr. Valerius has failed to establish a meritorious Fourth Amendment claim. *See Kimmelman*, 477 U.S. at 375 (requiring defendant to prove his argument is meritorious to succeed on an ineffective assistance claim based on counsel's failure to litigate a Fourth Amendment issue). As previously explained, Kan. Stat. Ann. § 22-2502(a)(1)(G) authorizes search warrants for "any information concerning the user of an electronic communication service . . . held by . . . entities primarily located outside the state of Kansas if the jurisdiction in which the entity is primarily located recognizes the authority of the magistrate to issue the search warrant . . . ." This statute

16

expressly authorizes acquisition of phone records held by a company located outside of Kansas. Mr. Valerius has failed to present any persuasive explanation why the court would have suppressed evidence of his cell phone records.

Second, even if Mr. Valerius could prove a meritorious Fourth Amendment claim, he has failed to demonstrate a reasonable probability that, absent counsel's purported error, he would have proceeded to trial.  As explained in Part III.B.1, *supra*, the government also had evidence against Mr. Valerius on Count 1 and Count 2 based on:  (1) phone records of Mr. Valerius's coconspirators, (2) his participation in the July 27, 2017 phone call about the proposed sale of methamphetamine, and (3) the search of his car on August 3, 2017, where officers found 350 grams of methamphetamine.  Given this evidence, Mr. Valerius cannot show a reasonable probability that "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (holding that defendant must show that counsel's deficient performance "affected the outcome of the plea process").

Mr. Valerius has failed to meet his burden to demonstrate deficient performance and prejudice under the *Strickland* standard.  The court denies his § 2255 motion based on ineffective assistance of counsel because he has failed to discharge his burden under the *Strickland* test.

### C.  Guilty Plea

Next, Mr. Valerius argues that he never intelligently and voluntarily pleaded guilty.  Doc. 103 at 17–22.  He asserts that "[t]he trial judge failed to inform [him] of all the critical elements and the government's burden of proof as to Count [1] of the [I]ndictment. Doc. 103 at 17.  So, he contends, he was unaware of the nature of the charge against him.  *Id.* at 21.  He argues that

the court's plea colloquy was "inadequate and defective."[3]  *Id.* at 17.  He cites six reasons why,

he alleges, the plea colloquy was inadequate:

- "The petitioner did not waive nor admit to any specific drug quantity that would have permitted the trial judge to make a fact finding that the quantity of drugs was 500G to 1.5KG in order for the guid[e]lines offen[s]e level to start at 34."  Doc. 103 at 17.

- "The petitioner did not waive nor admit to if any or all of those 500 G or more was actual or a mixture of methamphetamine, and no fact finding was made by the court."  *Id.*

- "Count one of the indictment charges petitioner with Conspiracy to possess with the intent to distribute and to distribute . . . in violation of 21 U.S.C. [§§] 841(a)(1) and 846[;] 841(a)(1) has two separate elem[e]nts for each distinct violation of what was charged in the indictment, the court failed to [ ] inform or have petitioner plea to the specific facts and elements of either version, which would [e]ncompass the drug types and quantity of the conspiracy."  *Id.* at 17–18.

- "The plea agreement coll[o]quy failed to include the facts and elements of 18 U.S.C. [§] 2 that the government was required to prove beyond a reasonable doubt . . . ."  *Id.* at 18.

- "The plea agreement and the plea coll[o]quy failed to inform [petitioner] before he plead[ed] guilty . . . that the government was required by law, to prove beyond a reasonable doubt to the jury or have [him] admit that . . . there was interdependence among the members of the conspiracy."  *Id.* at 19.

- "No specific quantity and type of controlled substance was admitted by the petitioner because the indictment did not specifically list any specific drug quantity to d[e]termine the . . . appropriate guidelines range."  *Id.* at 20.

Broadly, Mr. Valerius asserts that the court erred by accepting his guilty plea and imposing a

sentence.  The government responds that Mr. Valerius has waived his right to collaterally attack

his sentence in his written Plea Agreement with the government.  Doc. 112 at 20.  The

Agreement preserved Mr. Valerius's right to bring ineffective assistance of counsel claims, but

---

[3]      Mr. Valerius alleges no specific legal standard the court failed to satisfy during the plea colloquy. The court construes his claim as an alleged violation of Fed. R. Crim. P. 11(b)(1)(G), which provides that before the court accepts a guilty plea, it must address the defendant personally in open court to inform him of, and determine that he understands, the nature of each charge to which he is pleading.

provides that Mr. Valerius "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction or the components of the sentence to be imposed therein . . . ." Doc. 59 at 6 (Plea Agreement ¶ 10). He also waived "any right to challenge his sentence . . . in any collateral attack, including . . . a motion brought under 28 U.S.C. § 2255. *Id.* The following sections address whether Mr. Valerius has waived the right to collaterally attack his sentence under 28 U.S.C. § 2255.

### 1.   Collateral Attack Waiver

"When a defendant waives his right to bring a post-conviction collateral attack in his plea agreement and later brings a § 2255 petition," the Tenth Circuit considers three factors when deciding whether to enforce the waiver: "'(1) whether the disputed [claim] falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.'" *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (brackets in original)). For the reasons explained below, the court holds that Mr. Valerius's plea agreement bars his collateral attack under § 2255.

### a.   Scope

Under *Viera* and *Hahn*, courts must consider, first, whether the appeal "falls within the scope of the waiver of appellate rights . . . ." *Viera*, 674 F.3d at 1217 (quoting *Hahn*, 359 F.3d at 1325). Courts must "strictly construe" any waivers in a defendant's plea agreement and resolve any ambiguities in favor of a defendant's appellate rights. *Hahn*, 359 F.3d at 1325 (internal citation and quotation marks omitted).

Here, Mr. Valerius's motion under 28 U.S.C. § 2255 falls squarely within the scope of the collateral attack waiver in his written plea agreement (Doc. 59). In the plea agreement, Mr.

Valerius waived his right to challenge or collaterally attack his sentence in any manner, including a motion to "modify or change his sentence[ ] in . . . a motion brought under 28 U.S.C. § 2255." Doc 59 at 6 (Plea Agreement ¶ 10); *see also United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (holding that collateral attacks include challenges under 28 U.S.C. § 2255 "that complain about the substance of, or proceedings that determined, a defendant's original sentence"). The language of the plea agreement explicitly prohibits Mr. Valerius from challenging or collaterally attacking his sentence under 28 U.S.C. § 2255. Mr. Valerius's motion thus falls within the scope of the collateral attack waiver in his plea agreement.

### b.  Knowing and Voluntary

Next, the court must consider whether Mr. Valerius "'knowingly and voluntarily waived his appellate rights.'" *Viera*, 674 F.3d at 1217 (quoting *Hahn*, 359 F.3d at 1325). Courts must consider the plea agreement's language and whether there was an adequate Fed. R. Crim. P. 11 plea colloquy. *Id.* at 1325.

Mr. Valerius's plea agreement and plea colloquy demonstrated he was making a knowing and voluntary waiver of his appellate rights. Mr. Valerius's plea agreement provides that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence . . . ." Doc. 59 at 6 (Plea Agreement ¶ 10). And, during Mr. Valerius's plea hearing, the court reviewed the plea agreement with him. *See generally* Doc. 106 (Tr. of Plea Hr'g Mar. 12, 2018). Pertinent here, the court reviewed paragraph 10 of the plea agreement (Doc. 59 at 6), which provides for the waiver of appeal and collateral attack rights. Doc. 106 at 25–26. Mr. Valerius represented that he had reviewed the agreement carefully with his counsel. *Id.* at 11–12. The court inquired whether Mr. Valerius understood his waiver of appellate and collateral attack rights. *Id.* at 25–

26.  Mr. Valerius assured the court he understood the waiver.  *Id.* at 26.  He asserted he had no questions about this provision of the plea agreement.  *Id.*  Based on the colloquy, the court found that Mr. Valerius was mentally competent and that his decision to plead guilty was "informed, intelligent, knowing, and voluntary."  *Id.* at 36.  The language of the plea agreement and plea colloquy at the plea hearing show that Mr. Valerius knowingly and voluntarily waived his right to collaterally attack the court's acceptance of his plea agreement and his sentence.

### c.  Miscarriage of Justice

Finally, the Tenth Circuit has identified several "components" courts should consider when deciding whether enforcing a plea agreement's waiver of collateral attack will produce a miscarriage of justice.  *Hahn*, 359 F.3d at 1327.  These components include whether a court relied on an impermissible factor such as race, whether ineffective assistance of counsel rendered the appellate waiver invalid, whether the sentence exceeded the statutory maximum, or whether the waiver is "otherwise unlawful."  *Id.*  An appellate waiver is unlawful if it "'seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings . . . .'"  *Id.* (citation omitted).  Courts must consider "whether the waiver itself is unlawful because of some procedural error or because no waiver is possible," instead of the lawfulness of the sentence.  *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007).  "The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice."  *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Here, Mr. Valerius presents no argument that the court relied on race or some other impermissible factor to sentence him, or that ineffective assistance of counsel during plea negotiations rendered his waiver invalid.  Likewise, Mr. Valerius's sentence of 168 months' imprisonment did not exceed the statutory maximum sentence.  Doc. 87 at 30 (PSR ¶ 157)

(noting that Mr. Valerius faced a statutory maximum sentence of life imprisonment). No facts suggest his collateral attack waiver seriously affected the fairness, integrity, or public reputation of the judicial system. *Hahn*, 359 F.3d at 1327. In short, Mr. Valerius can identify no error barring his collateral attack waiver. Enforcing Mr. Valerius's collateral attack waiver will not produce a miscarriage of justice. The court concludes that Mr. Valerius has waived his right to collaterally attack his sentence. The court thus denies his § 2255 motion challenging his sentence based on the alleged inadequacies in the court's plea colloquy.[4]

### D. Waiver of Right to Direct Appeal

Finally, Mr. Valerius asserts that he "did not knowingly, intelligently and voluntar[i]ly waive his right to direct appeal." Doc. 103 at 23. "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629 (2002). When deciding whether a waiver of appellate rights was knowing and voluntary, reviewing courts must consider two main factors: "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily," and whether there was "an adequate Federal Rule of Criminal Procedure 11 colloquy." *Hahn*, 359 F.3d at 1325.

Here, both factors favor a finding that Mr. Valerius knowingly and voluntarily waived his appellate rights. In the plea agreement, Mr. Valerius represented that he "knowingly and voluntarily waives any right to appeal . . . ." Doc. 59 at 6 (Plea Agreement ¶ 10). And, he

---

[4]    The government also argues that Mr. Valerius's arguments about the inadequacy of the plea colloquy fails on the merits. Doc. 112 at 25–31. Because the court concludes that the terms of his plea agreement bar Mr. Valerius from collaterally attacking his sentence, the court declines to consider the merits of Mr. Valerius's claims.

represented, he "waives the right to appeal the sentence imposed in this case, except to the extent, if any, the [c]ourt imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C)."  *Id.*  In the plea agreement, Mr. Valerius acknowledged that "he has read the plea agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion."  *Id.* at 7 (Plea Agreement ¶ 14).

During the colloquy at the change-of-plea hearing, Mr. Valerius told the court that he had read the written plea agreement (Doc. 106 at 11), that he had reviewed it carefully with his counsel (*id.* at 12), and that he understood the consequences of pleading guilty to Count 1 under the plea agreement (*id.*).  The court reviewed the terms of the plea agreement with Mr. Valerius, including the factual basis for the plea.  *Id.* at 16–26.  And, the court specifically reviewed the appellate-waiver provision of paragraph 10:

> So Mr. Valerius, I'm now looking at . . . paragraph 10 on page 6.  It's called waiver of appeal and collateral attack.  I've read that paragraph.  I understand it to say that you have agreed, as part of your plea agreement, to give up, to waive, almost all of your rights of appeal and your right later to attack your conviction and sentence collaterally.  Is that the way you understand paragraph 10?

*Id.* at 25–26.  Mr. Valerius replied, "Yes."  *Id.* at 26.  The language of the plea agreement itself and the Rule 11 colloquy at the plea hearing demonstrate that Mr. Valerius understood he was waiving his right to appeal or collaterally attack his conviction and sentence as a condition of the plea agreement.  Mr. Valerius also understood the sentence he would receive when the court accepted the parties' plea agreement.[5]  *Id.* at 12.  Mr. Valerius's appeal waiver was voluntary, even if he did not know about the alleged errors that he now claims tainted his plea and sentence.

---

[5]     The court asked whether Mr. Valerius "underst[oo]d the sentencing consequences of pleading guilty to this charge under [his] plea agreement?"  Doc. 106 at 13.  Mr. Valerius replied, "Yes."  *Id.*

*See Hahn*, 359 F.3d at 1326 (rejecting contention that an appeal waiver could not be knowing and voluntary because a defendant "cannot possibly know in advance what errors a district court might make in the process of arriving at an appropriate sentence"); *id.* at 1327 (noting a defendant need not "know with specificity the result he forfeits before his waiver is valid").

### E.  Conclusion

Mr. Valerius has failed to establish that his trial counsel performed ineffectively by failing to challenge the validity of the Kansas search warrants authorizing seizure of his cell phone records, or by failing to move to suppress the evidence those warrants produced.  Mr. Valerius also has waived the right to collaterally attack his sentence under § 2255, and his right to direct appeal.

### F.  Certificate of Appealability

Finally, Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner. A court may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citations and internal quotation marks omitted).  The court concludes that no reasonable jurist would find the court's assessment of Mr. Valerius's claims debatable or wrong.  *See id.*  The court thus declines to issue a certificate of appealability for Mr. Valerius's claims in his Motion to Vacate under 28 U.S.C. § 2255 (Doc. 103).

**IV.     Conclusion**

For all these reasons, the court denies Mr. Valerius's Motion to Disqualify (Doc. 104) and Motion to Vacate (Doc. 103).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Valerius's Motion to Disqualify under 28 U.S.C. § 144 (Doc. 104) is denied.

**IT IS FURTHER ORDERED THAT** Mr. Valerius's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 103) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of May, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**